**The Grundy County National Bank, Plaintiff-Appellee, v. Beth Westfall, Defendant-Appellant.**

Gen. No. 69–58.

Third District.

July 6, 1970.

Rehearing denied July 30, 1970.

RYAN, P. J. dissenting.

Dunn and Hayes, of Morris, for appellant.

Black and Black, of Morris, for appellee.

STOUDER, J.

This is an appeal from a judgment of the Circuit Court of Grundy County denying the motion of Beth Westfall, Defendant-Appellant, to vacate and open up a judgment by confession entered in favor of Grundy County National Bank, Plaintiff-Appellee.

As it appears from affidavits and other documentary exhibits, prior to 1963, John Westfall and Beth, his wife, the defendant in this action, carried on a farm enterprise in Grundy County. The farm was leased from Beth Westfall's mother, who had a life estate therein, the remainder going to Beth Westfall. Receipts from the farm were deposited in a joint account in plaintiff bank and prior to 1963 defendant had made occasional withdrawals for farm purposes and had joined with her husband in borrowing money from plaintiff.

On October 21, 1963, at the request of her husband, Beth Westfall signed a loan guaranty agreement which was delivered by her husband to the plaintiff. Thereafter, the bank made loans to John Westfall on his signature alone and in 1967, made loans to him represented by judgment notes in the amount of $46,226.51. The farming business did not prosper in 1967 and on November 20, 1967, plaintiff secured a judgment by confession in the Circuit Court of Grundy County against John Westfall in the total amount of $50,815.33. On November 21, 1967, plaintiff secured a judgment by confession against Beth Westfall, defendant in this case, for a like amount based on the guaranty agreement and the warrant of attorney contained therein. It is the circumstances surrounding the execution of the guaranty agreement, as well as the effect of such circumstances

and provisions of the instrument itself, which form the basis of this controversy.

It is undisputed that Beth Westfall signed the printed form of loan guaranty agreement in October 1963 and it is also undisputed that except for her signature, the blanks were not filled in, either at the time she signed it, delivered it to her husband, or when it was received by the bank. The blanks which were not filled in included the date, the name of the debtor, the name of the bank and the limitation of extent of liability assumed. In their depositions which were included with defendant's motion, two officials of the plaintiff stated that the blanks were completed in October, 1967, about one month prior to the date of the judgment.

Defendant amended her motion to vacate the judgment by confession by pleading an affirmative defense, namely, that in February, 1968, an agreement had been entered into between plaintiff and defendant's husband, which according to defendant, was a release of the obligation. Copy of the agreement was attached as an exhibit. Plaintiff admitted the execution of the agreement, but in its motion in opposition thereto, contended that the agreement was not a release.

Plaintiff argues the judgment by confession is void because the warrant of attorney contained in the guaranty agreement was invalid. In particular, the defendant argues the warrant of attorney is uncertain and indefinite and further, that it requires resort to facts dehors the instrument to determine its application. Consequently, according to defendant, the warrant of attorney confers no authority to confess the judgments sought by plaintiff.

A warrant or power of attorney contained in a written document is like any other provision of the document, in that the intention of the parties governs its construction and application. Holmes v. Parker, 125

Ill 478, 17 NE 759 and First Nat. Bank of Elgin v. Husted, 57 Ill App2d 227, 205 NE2d 780. As a rule of construction it was early indicated that the warrant of attorney ought to be clearly given and strictly pursued. Frye v. Jones, 78 Ill 627. With respect to the afore-mentioned rule of construction, Holmes v. Parker, supra, states, "The rule that the power to confess a judgment must be clearly given and strictly pursued, otherwise the judgment may be set aside at the instance of the defendant, like all other rules, has its reasonable limita-tions, and must not be applied with such strictness as to defeat the obvious intentions of the party granting the power."

█ There is no doubt concerning what the parties intended by the loan guaranty agreement. Its only pur-pose was to provide additional security for the obliga-tions of a third party and the warrant of attorney as a part thereof, could have no other function or purpose. Accordingly, the intention of the parties should be given full effect unless contrary to some principle of law and, in our opinion, no such limitation is applicable.

█ Defendant relies upon and has directed our at-tention principally to three cases, namely, Little v. Dyer, 138 Ill 272, 27 NE 905, Weber v. Powers, 213 Ill 370, 72 NE 1070 and McFadden v. Lewis, 273 Ill App 343. We have examined these cases but believe that neither the reasoning nor the results therein are applicable to the case at bar. Each of the aforementioned cases in-volves a warrant of attorney contained in a written lease and the court holds that the parties did not intend or could not have intended to authorize confession of judg-ment in regard to that which was indefinite or uncer-tain. We believe the guaranty agreement sufficiently sets forth the basis for calculating the amount which may be due thereunder and the authority conferred is as definite as that pertaining to the periodic payments due under a lease. See Fortune v. Bartolomei, 164

Ill 51, 45 NE 274. It should be noted that there are many circumstances and conditions affecting the liability of a lessee which cannot be determined from the terms of the lease. See also Cutler v. Leader Cleaners, 12 Ill App2d 439, 139 NE2d 832. The cases which appear to have limited the intention of the parties were decided prior to the present Civil Practice Act and may be considered procedurally limited to some extent by the rigidity of common-law pleadings.

■ Defendant also relies on Brown v. Atwood, 200 Ill App 210, which held invalid a judgment by confession where the warrant of attorney was included in an arbitration agreement. The Brown case follows Duffy v. Odell, 117 Ill App 336, and accordingly, it would appear that arbitration agreements constitute a special situation in which warrants of attorney are proscribed without regard to the intention of the parties.

Defendant also argues that the guaranty agreement was invalid as a matter of law because blanks were not filled in at the time she signed the document. Alternatively, she argues that the facts and circumstances described in the affidavits concerning the execution of the agreement present a meritorious defense requiring that the judgment be vacated.

■ As indicated above, blanks on the guaranty agreement were not filled in at the time the document was signed by defendant but were filled in prior to application for judgment. That there were blanks does not render the agreement invalid, as contended for by defendant. In O'Toole v. Helio Products, 17 Ill App2d 82, 149 NE2d 795, a case principally relied upon by defendant, a promissory note was included as part of a retail sales contract. Defendant's signature appeared on the note portion but all other blanks were not filled in, neither at the time the instrument was executed nor at the time judgment was applied for. The court did not hold that the instrument was void on account of unfilled

259

blanks but held only defendant intended to sign an order for storm windows and did not intend to execute a promissory note. Indeed, the cases of F. W. Cook Brewing Co. v. Goldblatt, 184 Ill App 266 and Fisk Tire Co. v. Burmeister, 252 Ill App 545, cited by defendant, which, in fact, deal with guaranty agreements, are contrary to defendant's position. Both of these cases hold that a guaranty agreement is not invalid because it contains blanks at the time it is signed and delivered. Invalidity may result if the blanks are filled in contrary to the authorization of the obligor, such completion being considered a material alteration. See also, section 8-206 of the Uniform Commercial Code, chapter 26, Ill Rev Stats, which provides, "(1) Where a security contains the signature necessary to its issue or transfer but is incomplete in any other respect (a) Any person may complete it by filling in the blanks as authorized."

Defendant also argues that the authority to complete the blanks is a question of fact entitling defendant to a trial on the merits.

■ Supreme Court Rule 276 which governs the opening up of a judgment by confession, requires affidavits in accord with Rule 191 relating to motions for summary judgment. Such affidavits must disclose facts to which the affiant is competent to testify presenting a prima facie defense.

■ No claim is made by defendant of any fraud, misrepresentation, concealment, deception or other improper conduct either by her husband or by plaintiff which induced or caused her to sign and deliver the guaranty agreement. Nor does defendant claim or set forth facts in support of any such claim that she signed the document involuntarily or by mistake. In this court defendant argues that the blanks were filled in contrary to her authority, but such argument is not supported by any facts set forth in the documents filed in behalf of defendant. With respect to the execution of the guar-

anty agreement defendant states in her answer, "2. Said Guaranty Agreement was signed solely at the urging of defendant's husband, John B. Westfall. 3. Never before, after, or during the time that defendant signed said Guaranty was there any discussion between defendant and her husband as to the purpose for which said Guaranty Agreement would be used." Such statements fall short of being facts to which the affiant would be competent to testify. In addition to being somewhat contradictory, there is nothing in such statements from which it can be inferred that any condition or limitation was imposed by defendant at the time she signed the document or delivered it to her husband. Thus, it cannot be said that the blanks were filled in contrary to her authority when according to her own statement, no limitations were imposed.

▉▉▉ Lastly defendant argues that the agreement entered into between plaintiff and her husband constituted a release of her obligation. We believe it is unnecessary to consider this assignment of error because admittedly, the agreement was executed subsequent to the entry of judgment by confession and could not have constituted a defense to plaintiff's claim at the time judgment was sought and entered.

Accordingly, we find no error in the judgment of the Circuit Court of Grundy County and the judgment of said Court is affirmed.

Judgment affirmed.

ALLOY, J., concurs.

RYAN, P. J., dissents.

Dissenting opinion by RYAN, J.

I cannot concur in the majority opinion for two reasons: First, the power to confess judgment in the guar-

anty agreement is unclear, ambiguous and uncertain as to the amount or any method by which the amount of the judgment can be ascertained. Second, the motion to open the judgment by confession and the affidavit and answer filed therewith by the defendant and the pleadings and depositions filed by plaintiff disclose several defenses which require that the judgment be opened and the case proceed to trial.

The power to confess judgment is contained in a general guaranty agreement signed by the defendant. As the agreement appeared with the blanks filled in at the time judgment was entered, it was given to enable the defendant's husband to obtain credit from the plaintiff Bank. The defendant thereby guaranteed full and prompt payment to the Bank of:

> "any and all indebtedness, liabilities and obligations of every nature and kind of said Debtor to said Bank and every balance and part thereof whether now owing or due or which may hereafter from time to time be owing or due, and howsoever heretofore or hereafter created or arising or evidenced to the extent of $50,000 . . . ."

It should be noted that by this agreement the defendant's obligation is not limited to paying only future loans that the Bank may make to her husband.

In light of the all inclusive nature of the defendant's undertaking, let us examine the authority to confess judgment, which is contained in this guaranty agreement. This authority is as follows:

> "At any time after date hereof, to further secure the payment of said indebtedness, the undersigned hereby authorizes irrevocably any attorney of any court of record to enter the appearance of the undersigned in such court in term time or vacation, to waive service of process and to confess judgment

in favor of said Bank . . . together with costs of suit and reasonable attorney's fees to be included therewith . . . ."

One fatal defect in the confession of judgment clause is that it simply states "to confess judgment in favor of said Bank." It does not say for what amount judgment may be confessed. It does not say "for any amount that may be due and owing from the Debtor to the Bank." It does not say "for the amount which I may be obligated to pay under the terms of this agreement." It doesn't refer to any documents such as notes, leases, mortgages or even to "this instrument." Nor does it refer to any transactions from which anyone can compute or ascertain the extent of the authority granted to any attorney to confess judgment.

The majority opinion cites two cases to the effect that the intention of the parties governs the construction and application of the warrant to confess judgment. Holmes v. Parker, 125 Ill 478, 17 NE 759; First Nat. Bank of Elgin v. Husted, 57 Ill App2d 227, 205 NE2d 780. The facts in these two cases bear no resemblance to the facts of our case. Both of the above cases recognize the general rule that the power to confess judgment must be clearly given and strictly pursued, and a departure from such authority will render the confessed judgment void. The Holmes case as pointed out in the majority opinion qualifies the general rule by stating that the general rule will not be applied with such strictness as to defeat the *obvious intentions of the party granting the power*. In reading the warrant to confess judgment in the guaranty agreement now being considered, I cannot discern any *obvious intention of the defendant herein*. It must be remembered that the guaranty agreement was executed by the defendant to "enable John B. Westfall of Morris, Ill., hereinafter designated as 'Debtor,' to obtain credit from time to time of

263

the Grundy County National Bank." However, the agreement itself guarantees payment of all of the husband's "indebtedness, liabilities and obligations of every nature and kind . . . whether now owing or due or which may hereafter . . . be owing or due and howsoever heretofore or hereafter created or arising . . . ." Under such a situation, when the authority to confess judgment simply recites "to confess judgment in favor of said Bank" without adding "for the amount due hereon" or "for the amount of credit the Bank extended to the Debtor subsequent to the date hereof," or some other qualifying words, I can see no expression of any *obvious intention* which would remove this case from the application of the general rule. To confess judgment under the interpretation placed upon this power by the majority opinion is to read into the power words that are not there and words which cannot be inferred from the remainder of the agreement.

In addition to the above two cases, we find the general rule announced in a long line of Illinois cases as follows:

The authority to confess a judgment without process must be *clear* and *explicit;* must be *clearly given;* must be in *clear* and *unequivocal* language and so definite as not to be properly capable of any other construction and must be strictly pursued. Frye v. Jones, 78 Ill 627, 633; Weber v. Powers, 213 Ill 370, 380, 72 NE 1070; Wells v. Durst Chevrolet Co., 341 Ill 108, 111, 173 NE 92; McFadden v. Lewis, 273 Ill App 343, 345; Sharpe v. Second Baptist Church of Maywood, 274 Ill App 374, 377.

The majority opinion herein alludes to the possibility that the strictness of the above rule may have been tempered by the Civil Practice Act. Our courts have not so applied the rule. In Wolf v. Gaines, 33 Ill App2d 428, 430, 179 NE2d 466 (1961), the court applied the same strict rule by stating, "in determining the intention of the parties in an execution of a warrant of attor-

ney the same rules are applied which govern written contracts generally. However, the warrant must be signed by all persons against whom the judgment is to be entered, must be *clear*, must be in *unequivocal* language, must be *strictly construed* and *strictly followed.*" (Emphasis added.) Also in Travis v. Foreman, 75 Ill App2d 348 at page 350, 220 NE2d 648 (1966), the court stated: "It has long been recognized by Illinois Courts that the power to confess a judgment must be *clearly* given (citing authority) and that the authority to confess judgment under a warrant of attorney must be *strictly construed* and must be strictly followed." (Emphasis added.)

The language of the power to confess judgment in the guaranty agreement now under consideration is not clear, is not explicit, is not unequivocal and cannot be strictly pursued because its meaning is entirely unknown. Accordingly, the power is invalid and the judgment rendered thereon is void.

Assume, as the majority opinion does, that it was the intention of the defendant to confer authority on an attorney to confess judgment for any amount that may be due under and by virtue of her undertaking in the guaranty agreement. In my opinion, the judgment confessed thereunder would be void. The guaranty agreement itself is indefinite and uncertain. By an inspection of its terms, it is totally impossible to determine what amount, if any, is due to the bank thereunder. From the instrument itself it is impossible to ascertain whether the defendant's husband was ever obligated to the Bank in any amount or whether any credit was extended to him by virtue of the agreement. Without resort to other documents or records, it is impossible to tell whether the defendant's husband owed any "indebtedness, liabilities or obligations" to the Bank for which the defendant would be responsible under the terms of this agreement.

265

In Brown v. Atwood, 224 Ill App 77, at page 80, the court stated:

"There can be no valid warrant of attorney to confess judgment against the donor of the power where the amount of the judgment is not fixed in the power . . . . There may be a valid warrant of attorney to confess judgment for rent to become due by the terms of the lease where the monthly rental is fixed by the lease, and the amount due is ascertainable by inspection of the lease, but not for the confession of a judgment for other matters *not ascertainable by an inspection of the lease.*" (Emphasis added.)

In Little v. Dyer, 138 Ill 272, 27 NE 905, the power to confess judgment included in the lease authorized an attorney to confess judgment "for any rent which may be then due by the terms of this lease." By the terms of the lease all amounts paid by the lessor for water rents and gas bills and for keeping the premises in a clean and healthy condition were to be considered "so much additional rent." The court held that by virtue of the provision for making these other expenses "so much additional rent" a determination of the rent due under the lease would involve a hearing of evidence other than that afforded by the lease itself. The court held that such a power to confess judgment for such an uncertain and unliquidated amount was invalid.

The case of Fortune v. Bartolomei, 164 Ill 51, 45 NE 274, cited in the majority opinion does not sustain the position of the majority of this court. In that case, the lease in addition to providing for a stipulated amount of rent each month, also provided that the amounts which the lessor paid for water rent and gas bills and for keeping the catch basins clean and the premises in

a clean and healthy condition "are hereby declared to be so much additional rent." The power in the lease to confess judgment stated, "may confess judgment, from time to time, for any rent which may then be due by the terms of the lease." The court held that a valid judgment by confession could be entered as to any amount due under the stipulated monthly rental set forth in the lease because that amount could be computed by an inspection of the lease itself. The court upheld the judgment that had been entered by confession because the judgment consisted only of the amount of past due rent based on the amount of monthly rentals set forth in the lease. The court stated, however, that any amount accruing as rent under the other provisions of the lease as "so much additional rent" was an uncertain and unliquidated amount of money and the power to confess judgment for that part of the rent was void. The language of the Supreme Court in the Fortune case supports the position taken in this dissent.

Also in Hymen v. Anschicks, 270 Ill App 202, the power to confess judgment was for the amount of rent due under the terms of the lease "or any extension or renewals hereof." Judgment was confessed for rent due for May, June and July, 1932. The lease was for a one-year period commencing October 1, 1930, and expiring September 30, 1931, and from year to year thereafter, unless terminated in the manner provided in the lease. The court held that a renewal or holding over was a fact dehors the written lease and the power of attorney. The court stated at page 205:

> "By the terms of the lease the lessee had the option, by giving 60 days' notice in writing, to terminate the lease on September 30, 1931; the power of attorney did not authorize a confession that such notice had not been given. This was a ques-

tion of fact upon which defendant was entitled to a trial."

The court held in that case that a judgment by confession must be for a fixed and definite sum and not a confession of fact that can only be established by testimony outside the written documents. To the same effect see Weber v. Powers, 213 Ill 370, 72 NE 1070; Weiss v. Danilczik, 262 Ill App 551; and McFadden v. Lewis, 273 Ill App 343.

In our case, as in the lease cases above cited, before liability can be imposed upon the defendant, there must be determinations of fact evidence of which is not supplied by the document itself. In the lease cases, the questions of fact were primarily whether there had been an extension of the lease or a holding over under the same, or whether additional rent under the terms of the lease had accrued by virtue of certain expenditures the lessor had made. In our case, there are many questions of fact, evidence of which cannot be supplied by the guaranty agreement. As an example: Was any credit extended to the Debtor by the Bank? And using the all-inclusive language of the agreement itself—Were there any "indebtedness, liabilities and obligations of every nature and kind of said Debtor to said Bank and every balance and part thereof, whether now owing or due, or which may hereafter from time to time be owing or due, and howsoever heretofore or hereafter created or arising or evidenced to the extent of $50,000?" This attempt by the plaintiff to touch all the bases and secure itself as to every conceivable avenue of the debtor's obligations creates so many questions of fact that proof thereof must necessarily come from many sources dehors the guaranty agreement itself before there can be a determination as to whether there is any liability thereunder and thus any amount for which judgment can be confessed.

As our Supreme Court said in Little v. Dyer, 138 Ill 272, 27 NE 905 at 279:

> "It would be absurd to contend that such unrestricted power was given to the creditor or his attorney, and a rule such as that would be in the highest degree productive of fraud and subversive of justice, and would be tantamount to making one of the parties in interest not only both plaintiff and defendant, but court also,—and that, too, in his own cause."

And again at page 280:

> "A power so unrestricted cannot lawfully be either given or exercised. Though a demand be ever so just, a party ought not to be permitted to coerce payment without the sanction of judicial authority. To hold the power valid, and that the attorney might waive all errors and all right of appeal, would be to open the business transactions of men to infinite abuse."

I feel that the observations in the Little case, supra, relative to the situation being productive of fraud and open to abuse are particularly true in the case at bar, in view of the fact that the motion to open the judgment and the affidavit and the answer filed by the defendant and the depositions filed in said cause indicate that the document was executed in blank in 1963 and that the blanks were not filled in until 1967. This observation is related to the authority to confess judgment under the warrant contained in the document and the possibility of the abuse thereof and is not related to the validity of the guaranty instrument itself, which shall be discussed later.

For the reasons above stated, I am of the opinion that the warrant to confess judgment was void and the

court should have granted defendant's motion to open the judgment.

As to the guaranty agreement, we are not here concerned with the validity or the invalidity of the instrument by virtue of the fact that it was executed with unfilled blanks. This case in the trial court and in this court involves only a motion to open a judgment by confession filed pursuant to Supreme Court Rule 276 and supported by an affidavit filed pursuant to Supreme Court Rule 191. Rule 276 provides in part: "If the motion and affidavit disclose a prima facie defense on the merits . . . the court shall set the motion for hearing. The plaintiff may file counteraffidavits. If, at the hearing upon the motion, it appears that the defendant has a defense on the merits . . . and that he has been diligent in presenting his motion . . . the court shall sustain the motion . . . and the case shall thereafter proceed to trial . . . ."

The defendant's motion to open the judgment was accompanied by a verified answer and an affidavit as required by Rule 276. The affidavit incorporated the verified allegations of the answer into the affidavit by reference. The plaintiff filed a motion to strike the defendant's motion to open the judgment. The court granted the defendant's motion to strike and confirmed the judgment. It appears from the record that the case was decided solely on the issue of the sufficiency of the defendant's motion to open the judgment and the affidavit as tested by the plaintiff's motion to strike. However, the plaintiff's motion to strike attempts to controvert the allegations of the motion, affidavit and answer of the defendant. Depositions were filed in opposition to the motion to open. In light of the attempt by the plaintiff to controvert the factual allegations of the defendant's motion and in light of the filing of the depositions, it is apparent that more than the mere suffi-

ciency of the defendant's motion to open and the affidavit was determined by the trial court.

Although we are not here concerned with a determination of the validity of the guaranty agreement, we must determine whether the defendant has raised a defense on the question of the validity of the agreement which requires a trial on the issues under Supreme Court Rule 276. Had the plaintiff limited its pleading to a simple motion testing the validity of the plaintiff's motion to open, answer and affidavit, a different picture would have been presented. The plaintiff, however, attempted to controvert the defendant's affidavit and attempted to show facts which would presumably give rise to an implied authority to fill in the blanks in the agreement. In support of the plaintiff's allegations in its motion, it filed several depositions. After reviewing the pleadings and the depositions, I am of the opinion that three distinct defenses have been raised to the validity of the guaranty agreement. First, the blanks on the executed agreement were not filled in pursuant to any agreement between the plaintiff and the defendant. Second, the pleadings create an issue of fact as to whether the circumstances surrounding the execution and delivery of the guaranty agreement created an implied authority in the plaintiff bank to fill in the blanks. Third, under the circumstances surrounding the filling in of the blanks, a question of fact has been created as to whether the blanks in the guaranty agreement were filled in within a reasonable time.

As stated in the majority opinion, the fact that the blanks on the instrument are not filled in at the time of its execution does not render it invalid. However, the person who fills in the blanks must do so *in accordance with the agreement of the parties.* This is the holding of the Cook Brewing Co. case and the Fisk Tire Co. cases cited in the majority opinion. The record in-

dicates clearly that there never was an agreement between the defendant and her husband as to the purposes for which the instrument was signed nor the amount which was to be filled in as the limit of her undertaking. Likewise, the record indicates that there was never any agreement between the defendant and the plaintiff bank as to the authority to fill in the blanks. In light of this, it cannot be said that the blanks were filled in in accordance with an agreement between the parties, which is one of the requirements necessary to validate an agreement executed in blank as set forth in the authorities cited above.

The affidavit filed by the defendant in support of its motion to open alleged that the guaranty was not based upon an *implied agreement*. Although it may appear that such an allegation is a conclusion and does not conform to the requirements of an affidavit to be filed under Supreme Court Rule 191, no motion was made by the plaintiff attacking the sufficiency of this statement in the affidavit. In fact, the plaintiff's motion to strike raises no question as to the sufficiency of any part of the plaintiff's affidavit, but questions only the sufficiency of the plaintiff's motion to open, and her answer. Therefore, the sufficiency of the statement in the affidavit that there was no "implied agreement" cannot now be questioned. Kent v. Rhomberg, 288 Ill App 328, 6 NE2d 271.

The plaintiff's pleadings and the depositions only serve to emphasize the point that questions of fact do, in fact, exist as to whether there was implied authority on the part of the bank to fill in the blanks on the instrument. This is a question of fact which should be determined by a trier of fact, either court or jury, after the judgment has been opened and after the case has proceeded to trial, as provided in Rule 276. It is not a question of fact under the circumstances herein that can be determined on a motion to strike the defendant's mo-

tion to open a judgment by confession. Authority to fill in blanks in an instrument may be implied from the many circumstances surrounding the transaction. 3 CJS, Alterations of Instruments, § 63. In this case, the existence or nonexistence of such implied authority should not be determined by a trial by affidavit and counter-affidavits.

A very necessary adjunct that must be considered in connection with the completion of instruments as authorized or in accordance with the authority given or implied, is the time within which such instrument must be completed. Section 14 of the Uniform Negotiable Instruments Act, which was substantially incorporated in section 34, chapter 98, Ill Rev Stats, and which has now been repealed, provided that the blanks in an instrument had to be filled strictly in accordance with the authority given and *within a reasonable time*. The Uniform Commercial Code, SHA, chapter 26, section 3–115, comment 1, states:

> "The third sentence of Section 14, providing that the instrument must be filled up strictly in accordance with the authority given and within a reasonable time, is eliminated as entirely superfluous, since any authority must always be exercised in accordance with its limitations, and expires within a reasonable time unless a time limit is fixed."

In 11 Am Jur2d, Bills and Notes, § 76, it is stated:

> "What is a reasonable time for completion of an instrument depends upon the facts of each particular case and has been held to constitute a question for the jury where the facts are disputed or a mixed question of law and fact."

Therefore, even if we assume that the implied authority to fill in the blanks did exist, there is the further question as to whether this authority was exercised

within a reasonable time. The defendant in her answer alleged that the blanks on said document were not filled in until some date after October 19, 1967, when she saw the instrument in the office of an attorney, four years after it was signed by the defendant. This allegation, coupled with the evidence which plaintiff itself presented in the depositions, clearly indicates that this was a defense which should have been decided by a trial and not on a hearing on a motion.

Before this question can be adequately understood, a more definite picture of the factual situation surrounding the entire transaction must be presented. The depositions that were filed herein reveal the following facts:

On or about October 21, 1963, the plaintiff bank requested the defendant's husband to have his wife sign this guaranty agreement. He took it to their home and the defendant signed it. At the time she signed the printed form, none of the blanks thereon were filled in, with the possible exception of the name of the bank. It was definitely established that the name of the debtor (defendant's husband), his address, the maximum limit of the possible liability of the defendant and the place and date of execution were all blanks that were not filled in at the time the defendant signed the document. Defendant's husband returned the instrument to the bank, and the same was put in the defendant's husband's loan file at the bank. No discussion was had with any bank official by the defendant or her husband concerning the filling in of any of the blanks. In the fall of 1967, some marital difficulties developed between the defendant and her husband. She went to California for about six weeks and returned on October 15, 1967. She had decided to separate from her husband and went to the bank to ascertain the extent of his obligations to the bank. The president of the bank stated that this occasion was the first time that he knew of any family trouble between the defendant and her husband. A few

274

days later on October 19, 1967, the defendant consulted an attorney, who called the bank and asked it to send to his office the defendant's husband's loan file. The bank accommodated the attorney (he being a director of the bank) and an officer of the loan department took the file to the attorney's office. This officer then exhibited to the attorney the guaranty agreement. The blanks had not been filled in at that time. The defendant's attorney told the bank official that because this instrument was executed in blank it "wasn't worth the paper it was written on." The bank official later that day communicated this information to the president of the bank, who a few days later reported the incident to the board of directors of the bank and stated that he was going to fill in the blanks on this instrument, which he did the following day. At that time, defendant's husband was not in default on any of his loans.

Therefore, again assuming for sake of argument that when the bank received the executed guaranty agreement it had the implied authority to fill in the blanks, the circumstances existing at the time the blanks were filled in certainly raise a question of fact as to whether the authority was exercised within a reasonable time. The bank knew that marital problems had arisen between the defendant and her husband. The defendant had consulted an attorney. Her attorney had informed the bank that the guaranty agreement was not valid because it was executed in blank. The president of the bank, after being informed of this fact and the attorney's contention, attempted to remedy the defect by filling in the blanks. All of this transpired four years after the agreement was executed by the defendant and at a time when the defendant's husband was not in default on any of the obligations which he owed to the bank. These are facts that should have been considered by a trier of fact and not summarily disposed of on a ruling on a motion to dismiss the defendant's motion to open

275

the judgment. The reasonableness of the conduct of the bank under these circumstances created a defense which required that the court open a judgment and proceed to trial.

The pleadings by both parties in this controversy have been something less than precise. However, upon careful examination of the same, one can only conclude that all of the points discussed in this dissent have been raised by the pleadings filed herein, presented to the trial court, and have been preserved for review and have not been waived.

For the above reasons, I am of the opinion that the decision of the trial court should be reversed.